# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHY A. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-43-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Kathy Davis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born July 31, 1962, and was fifty-one years old at the time of the most recent administrative hearing (Tr. 42, 73). She completed the twelfth grade, and has worked as a nurse's aide, home health aide, hotel housekeeper, and production assembler (Tr. 35, 227). The claimant alleges inability to work since an amended onset date of October 15, 2011, due to type II diabetes, high blood pressure, and depression (Tr. 28, 227).

**Procedural History**

On August 12, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ John W. Belcher conducted an administrative hearing and ALJ David W. Engel, writing for ALJ Belcher, determined that the claimant was not disabled in a written opinion dated October 1, 2013 (Tr. 26-36). The Appeals Council denied review, so ALJ Engel's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift/carry/push/pull fifty pounds occasionally and twenty pounds frequently, stand/walk about six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, and that she could frequently climb stairs or ramps, ropes, ladders, and scaffolds, as well as frequently

balance, but that she could only occasionally bend, stoop, crouch, kneel, or crawl, and only occasionally tolerate exposure to odors, dust, toxins, and poor ventilation (Tr. 30). The ALJ thus concluded that the claimant could return to her past relevant work as a nurse aide, home health aide, hotel housekeeper, and production assembler (Tr. 35).

**Review**

The claimant contends that the ALJ erred by: (i) by failing to properly evaluate the opinion of her treating physician, Dr. Isabel Vega, and (ii) improperly assessing her credibility. The Court finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairment of diabetes mellitus, with neuropathy and urgency as a result, as well as the nonsevere impairments of hypertension, high blood pressure, mild spondylosis, and the medically-determinable impairment of depression (Tr. 28-29). Relevant treatment records reflect she was largely treated at CCOM Medical in Muskogee, Oklahoma, where Dr. Vega was one of the physicians who worked there, and her regular diagnoses included diabetes mellitus and hypertension, while later records after 2012 also reflect diagnoses of osteoarthritis, neuropathy, and possible rheumatoid arthritis (Tr. 344-385).

On January 21, 2012, Dr. Jay Tenpenny performed a consultative examination. Her impression was that the claimant had diabetes and hypertension (Tr. 336). She stated that the claimant could be expected to sit, stand, and walk normally in an eight-hour workday with normal breaks, that she did not need an assistive device, and she did not have any limitations with lifting and could be expected to lift and carry age and gender-

appropriate weight, and that there were no postural or manipulative limitations, nor were there relevant visual, communicative, or work-place environmental limitations (Tr. 336).

On April 23, 2013, Dr. Sri Reddy ordered EMG and nerve conduction studies of the claimant's bilateral upper and lower extremities, but it was a limited study due to discomfort, and produced normal, abnormal, and absent readings (Tr. 406-407).

On April 30, 2013, Dr. Beau Jennings completed a Medical Source Statement (MSS) regarding the claimant's physical ability to do work-related activities. He indicated the claimant could lift/carry up to twenty pounds continuously, up to fifty pounds occasionally, sit four hours at a time up to eight hours per day, and stand/walk three hours at a time up to eight hours per day (Tr. 422-423). Furthermore, he found she could continuously use her hands and feet; frequently climb stairs/ramps/ladders scaffolds and balance; and occasionally stoop, kneel, crouch, and crawl (Tr. 424-425). He further indicated she had no environmental limitations (Tr. 426).

On July 3, 2013, Dr. Vega completed a physical MSS statement regarding the claimant, indicating her statement applied from February 1, 2013 to April 1, 2013, a two-month period (Tr. 464). Dr. Vega indicated that the claimant could occasionally lift ten pounds and frequently lift less than ten pounds, could stand/walk/sit less than two hours out of an eight-hour workday, including sitting up to two hours at a time (Tr. 463). Additionally, she indicated that the claimant could never kneel, crouch, crawl; occasionally climb, balance, reach, and handle; and frequently finger and feel (Tr. 464). She found there were no environmental restrictions. Finally, she left the section blank

where she was asked to describe clinical and laboratory findings that imposed those limitations on the claimant (Tr. 464).

At the first administrative hearing, the claimant testified that she cannot go eight hours without needing to use the bathroom, and sometimes has to wear Depends (Tr. 56). Additionally, she stated that she gets weak and tired and falls asleep (Tr. 56). She testified that she has arthritis, and that the arthritis and nerve problems were the result of her diabetes (Tr. 57). Additionally, she stated that she will get "a charley horse" at least on a weekly basis (Tr. 59). As to her diabetes, she testified that a good blood sugar reading for her is 380, but that sometime it is as high as 580 or too high to register (Tr. 61-62). She stated that she can walk up to a mile and carry a gallon of milk but not two gallons at the same time and that she did not have any lifting restrictions (Tr. 65-67). Based on her testimony, the ALJ ordered more tests.

At the second administrative hearing, Dr. Don R. Clark, M.D., testified regarding the claimant's impairments (Tr. 75-84). He described her diabetes as running at a "chronic hyperglycemia" (Tr. 76). Dr. Clark reviewed the findings of the various physicians in the record, and noted some diagnoses of rheumatoid arthritis but that on testing her rheumatoid factors were normal (Tr. 78). He then concluded that "physically I think she has poorly controlled diabetes mellitus with frequency, no weight loss, and no complications of other workings" (Tr. 78). It was his opinion that her limited daily activities were due to "lack of conditioning" rather than actual physical limitations (Tr. 78). When questioned about the nerve conduction study that the ALJ had ordered, Dr. Clark characterized the findings as normal, and when questioned about the "abnormal"

and "absent" findings, Dr. Clark explained that there were abnormal results that were not documented by any other findings, but that those did not affect his opinion that the study was normal, *i. e.*, that it contained abnormalities with no clinical correlation (Tr. 81-84). He explained further that with her diabetes, some polyneuropathy could be expected and is probably what she was experiencing, but that there was no atrophy or discoordination (Tr. 83-84).

In his written opinion, the ALJ summarized the claimant's testimony as well as the medical evidence and various opinions by the treating, consultative, and reviewing physicians. As to the opinion evidence in the record, the ALJ gave significant weight to Dr. Tenpenny's opinion (Tr. 34). As to Dr. Vega, the ALJ gave it little weight after he found that her MSS of less than sedentary work was not consistent with the records from her own facility (CCOM), and that the CCOM records should be given considerable weight (Tr. 35). The ALJ then assigned significant weight to Dr. Reddy's findings and substantial weight to Dr. Jennings consultative exam findings (Tr. 35). Finally, the ALJ gave Dr. Clark's opinion great weight (Tr. 35). As to the claimant's credibility, the ALJ used the typical boilerplate to find her not credible. He further found that the alleged effects of her impairments were not borne out by the record, in light of discrepancies between her alleged symptoms and the documentation in the file; moreover, he noted that the physical findings and clinical data did not corroborate or correlate with the claimant's complaints (Tr. 31, 34). The ALJ then concluded that the RFC was supported by essentially all opinions and records available, with the exception of Dr. Vega's opinion (Tr. 35).

The claimant first contends that the ALJ failed to properly analyze Dr. Vega's opinion as a treating physician, specifically that he erred in assigning her opinion little weight and in giving great weight to Dr. Clark's opinion. The Court finds that the ALJ did not, however, commit any error in his analysis. As Dr. Vega was a treating physician, the ALJ was required to give her medical opinion controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that her opinion was not entitled to controlling weight, he was nevertheless required to determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject any of Dr. Vega's medical opinions entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating

source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's analysis of the opinion of Dr. Vega's opinon is set forth above. The Court finds that the ALJ considered her opinion in accordance with the appropriate standards and properly concluded it was entitled to little weight. In fact, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including Dr. Vega, whose opinion contradicted every other physician who treated her, examined her, or reviewed her records, all of which was fully discussed by the ALJ. Furthermore, her opinion applied only to a two-month period in 2013 which, by definition, could not meet the durational requirement. The ALJ thus did not commit error in failing to include any limitations imposed by Dr. Vega in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight he gave to Dr. Vega's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The claimant next argues that the ALJ erred by failing to properly assess her credibility. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias,* 933

F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In this case, the ALJ summarized the claimant's testimony and determined that his "statements concerning the intensity, persistence, and limiting effects of his symptoms [were] not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" (Tr. 31). Use of this boilerplate language is generally disfavored, but this was not the sum total of the ALJ's analysis of the claimants' credibility. *See, e. g., Moua v. Colvin*, 541 Fed. Appx. 794, 800 (10th Cir. 2013) ("[T]he use of standard boilerplate language will not suffice, but only in the absence of a more thorough analysis."), *quoting Hardman*, 365 F3d at 697 and *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). In this case, the ALJ fully discussed the medical evidence on which he relied to find that the claimant was not credible, as described above. Thus, the ALJ thus sufficiently linked his credibility determination to the evidence as required by *Kepler*, and provided specific reasons for the determination in accordance with

*Hardman*. His credibility determination was therefore not clearly erroneous. Accordingly, the decision of the Commissioner should be AFFIRMED.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 28th day of September, 2016.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**